```
              UNITED STATES BANKRUPTCY COURT
            FOR THE NORTHERN DISTRICT OF IOWA
                      WESTERN DIVISION
```

IN RE:

VICKI JO BAUDER                              Chapter 7

    Debtor.                           Bankruptcy No. 04-00841S

MICHAEL W. ELLSWORTH

    Plaintiff

vs.                                          Adversary No. 04-9064S

VICKI JO BAUDER

    Defendant.

                    MEMORANDUM DECISION RE:
                    <u>OBJECTION TO DISCHARGE</u>

    Michael W. Ellsworth objects to the discharge of debtor's debts.  Trial was held June 8, 2005 in Sioux City.  John S. Moeller appeared as attorney for Ellsworth.  Craig H. Lane appeared as attorney for Vicki Jo Bauder, the debtor.  The court has jurisdiction of the adversary proceeding under 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a), and the District Court's Order of Reference.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(J).

<u>Findings of Fact</u>

    Ellsworth claims that Vicki Jo Bauder's discharge should

be denied because she knowingly and fraudulently filed false schedules under oath.  She denies this.

Bauder is 52 years old.  She lives in Sioux City.  Her granddaughter Heidi, who is approximately seven years old, lives with her.  Bauder is employed as a bus driver for the Sioux City transit system.  She was educated through the eleventh grade.  Ellsworth and Bauder formerly had a romantic relationship.  He lived with Bauder intermittently from sometime in 2002 to September 2003, when he ended the relationship and moved out.

Bauder filed her chapter 7 petition on March 10, 2004.  Her schedule of personal property listed the following items:

> Household goods: bed, dresser, loveseat, tv, table, living room, dining room table, sewing machine, fridge, hide-a-bed, dresser, all valued at $575.00;
>
> wearing apparel valued at $300.00;
>
> a pension with the Iowa Public Employees Retirement System valued at $15,595.78
>
> tax refunds and accrued wages of $1,000.00; and
>
> a 1999 Grand Prix automobile valued at $3,700.00.

(Exhibit 1.)  All of these property interests, except for the automobile, were claimed exempt.

During the period of the parties' relationship, Ellsworth bought several gifts for Bauder, none of which was listed initially on Bauder's bankruptcy schedules.  Among the gifts

was a diamond ring, bought on sale by Ellsworth at Zale's Jewelers in 2002 for $1,000.00.  The gifts also included heart-shaped earrings with diamond stones bought in 2002 for $150.00, a necklace, a watch purchased for $100.00, and a lawnmower purchased by Bauder using Ellsworth's credit card. The mower cost between $100.00 and $120.00.

Ellsworth claims also that Bauder failed to list in her schedules a watch with a band containing turquoise stones, a second television, a doll collection, and a grandfather clock.

At her meeting of creditors on April 19, 2004, Bauder was questioned about her property.  Shortly thereafter, on April 28, Bauder filed an amendment to her schedule of personal property and her claim of exemptions to clarify her original schedules.  The amendment included several household items that had not been listed on the initial property schedules. She also amended to list the diamond ring which she valued at $300.00.  The amendment stated that the ring was in the possession of her daughter.

In her testimony at trial, Bauder provided various explanations for the lack of completeness of her initial schedules.  She said she read the schedules before signing them, but she may not have understood all of them.  She testified that she did the best she could in listing her

property. She said she sat on her couch and thought about what she had.

Also, she said she was advised by someone in her lawyer's office that she did not have to list property that was owned by her granddaughter, that she did not have to list property that was not in her possession, and she did not have to list property that was not worth anything. She said she was told she had to list only "big items."

Explaining her omissions of specific items, she said that she did not list the heart-shaped earrings because she had lost one, and the remaining one would have no value. She said she did not list the necklace given to her by Ellsworth because the chain was broken and the pendant had been lost. Likewise, she did not list the watch bought for her by Ellsworth because it was broken. The turquoise watch also had been lost. She did not list a 36" Zenith television because it did not work, and she did not list a 20" television because it belonged to her granddaughter. Bauder explained that the grandfather clock does not work. When she filed her schedules, the lawnmower did not work, although she has since had it repaired. As to the doll collection, she said she purchased about 10 porcelain dolls for $2.00 to $3.00 each at the Dollar Store, but that some had been damaged or destroyed

4

by her dog.  She said too that she did not list them because she bought them with the intent that when she died they would be left to her granddaughter or her mother as a remembrance.

As to her failure to schedule the diamond ring, she gave various explanations.  She testified the ring was damaged--one diamond was missing, and the prongs were bent--and because of its condition, she said it had only sentimental value, not monetary value.  She said she thought it might be worth $300.00, the value she placed on it in her amendment.  She took it to a pawn shop, and someone there told her it was worth only $3.00 to $4.00.  She took it to Zale's Jewelers, where it was purchased, to get an estimate on its repairs, but she said she could not afford to fix it.

Also, she did not initially schedule the ring because she did not think she had to list anything that was not in her possession.  She had given the ring to her daughter for her to keep in her daughter's safety deposit box.  She explained also that because she did not have possession of the ring at the time she filed, she did not think about it or remember to put it on her schedules.  She said that her daughter reminded her of the ring when she helped her with the amendment.

## Discussion

5

Debtor shall be granted a discharge unless, "the debtor knowingly and fraudulently, in ... the case--made a false oath."  11 U.S.C. § 727(a)(4)(A).  Bauder's bankruptcy schedules were signed under penalty of perjury.  The schedules, as such, are "written declarations which have the force and effect of oaths."  Jordan v. Bren (In re Bren), 303 B.R. 610, 613 (B.A.P. 8th Cir. 2004), rev'd in part on other grounds, 122 Fed. Appx. 285 (8th Cir. 2005).  To bar discharge, the false statement must be material.  Mertz v. Rott, 955 F.2d 596, 598 (8th Cir. 1992).  The subject matter is material if it relates to the debtor's business transactions or estate, or if the subject matter concerns the debtor's assets or business operations.  Palatine National Bank of Palatine, Illinois v. Olson (In re Olson), 916 F.2d 481, 484 (8th Cir. 1990).  "Deliberate omissions by the debtor may ... result in the denial of a discharge."  Chalik v. Moorefield (In re Chalik), 748 F.2d 616, 618 (11th Cir. 1984).  The objector need not show detriment to creditors, nor does it matter whether or not the debtor intended to injure his or her creditors.  Id.  It is necessary only that debtor told an intentional untruth in a matter material to the case.  See Aronofsky v. Bostian, 133 F.2d 290, 292 (8th Cir. 1943)(an Act case).

Full disclosure is a prerequisite to the debtor's

obtaining a discharge.  <u>American State Bank v. Montgomery (In re Montgomery)</u>, 86 B.R. 948, 956 (Bankr. N.D. Ind. 1988).  To a great extent, the system depends on debtors voluntarily telling the truth.  There are insufficient resources in the bankruptcy system to check every schedule for accuracy or to complete an inventory of every debtor's assets.

Ellsworth contends that Bauder knowingly and fraudulently failed to schedule her ownership of the necklace, two watches, earrings, a 36" television set, a grandfather clock, a lawnmower, a diamond ring, and a doll collection.  There was a credible explanation as to some items.  She no longer owned some of the items at the time of filing.  She no longer had the watch with turquoise stones, the necklace or one of the two earrings.

She did have the other items.  For those items which she did possess but did not disclose, her main explanations are that the items lacked value or did not belong to her.

As to the diamond ring, she gives various explanations.  She forgot about it or she was told she did not have to list items in someone else's possession, and the ring was in her daughter's safety deposit box.  She also justifies her omission by saying the ring was not worth much.

I am troubled by the concept that debtor would think that

7

she can value her property and if she values it low enough, she does not have to disclose it. Bauder's obligation was to disclose her property of whatever kind and whatever value. Creditors and the trustee must be given the opportunity to evaluate the debtor's property, not be kept ignorant of property interests by a debtor's self-serving evaluation. Bauder says she was told by someone in her attorney's office that she did not have to list property of no value. Her attorney does a significant amount of bankruptcy work. I find it unlikely that he would advise a debtor or train his staff to advise a debtor that a debtor's disclosure of assets depended in any way on the debtor's valuation of the assets. There was no corroborating testimony by anyone from the law firm or the staff to support Bauder's testimony.

    Nonetheless, I find I do not need to decide this proceeding on the failure to list "valueless" property. Bauder's schedules were knowingly false because she failed to list her ownership in the diamond ring. She picked the ring out. She testified that it was purchased for $1,000.00 sometime in 2002. She placed a value of $300.00 on it in her amendment. She had it put in her daughter's safety deposit box, which supports an inference that she thought it had value. I do not find credible her testimony that she believed

it had only sentimental value.  So did the doll collection, but she made no effort to protect the collection.  Indeed some of the dolls were damaged by a pet dog.

The fact that her reasons for not listing the ring contradict each other, detract from her credibility.  I believe that in this case it is more likely than not that she placed the ring in her daughter's possession to keep it out of the knowledge and reach of creditors.  This appears to have been an alternative theory of Ellsworth's objection to discharge under 11 U.S.C. § 727(a)(2).  Nor do I believe the explanation that she forgot about the ring because her daughter had it.  She had the ring when she and Ellsworth separated in September 2003.  It was an emotional event in her life.  She filed bankruptcy March 10, 2004.  I do not believe she forgot she owned the ring.

By failing to list the diamond Bauder knowingly and fraudulently made a false oath in the case, and her discharge should be denied under 11 U.S.C. § 727(a)(4).

IT IS ORDERED that judgment shall enter that debtor's discharge is denied.

DATED & ENTERED:
June 20, 2005                          /s/ W.L. Edmonds

                                       William L. Edmonds, Bankruptcy Judge